## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

TRISTANEY BAKER,

               Petitioner,     :           Case No. 2:25-cv-00604

     - vs -                         District Judge James L. Graham
                                         Magistrate Judge Michael R. Merz

WARDEN, Dayton Correctional
  Institution,

                                      :
          Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus action under 28 U.S.C. § 2254 is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 12), the Return of Writ (ECF No. 13), the Supplemental State Court Record (ECF No. 14), Petitioner's Reply (ECF No. 28), and Respondent's Sur-Reply (ECF No. 32).

**Litigation History**

On May 13, 2021, Petitioner was indicted by a Muskingum County grand jury on two counts of aggravated murder with a firearm specification in violation of Ohio Revised Code § 2903.01(A)(Count 1) and Ohio Revised Code § 2903.01(B)(Count 2), one count of aggravated burglary in violation of Ohio Revised Code § 2911.11(A)(2), also with a firearm specification, one

1

count of tampering with evidence in violation of Ohio Revised Code § 2921.12(A)(1), and one count of possession of criminal tools in violation of Ohio Revised Code §2923.24(A)(Indictment, State Court Record ECF No. 12, Ex. 1).  Petitioner pleaded guilty after negotiations to avoid the death penalty and was sentenced to life imprisonment without parole plus six years.  *Id.* at Ex. 5.

Baker appealed to the Ohio Fifth District Court of Appeals claiming she had received ineffective assistance of trial counsel and that her sentence was unconstitutional.  The Fifth District affirmed, *State v. Baker,* 2022-Ohio-1853 (Ohio App. 5th Dist. Jun. 1, 2022).  Baker failed to timely appeal to the Ohio Supreme Court, but with the assistance of new counsel she later filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 which she several times moved to amend (State Court Record, ECF No. 12, Exs. 11, 13, 15, and 16).  After an evidentiary hearing, the trial judge requested the parties to file proposed findings of fact and conclusions of law which they did. *Id.* at Exs. 17, 18.  The Common Pleas Court then denied relief. *Id.* at Ex. 19.

Petitioner appealed to the Ohio Fifth District Court of Appeals which affirmed the trial court. *Id.* at Ex. 24.  The Ohio Supreme Court declined to exercise jurisdiction over a subsequent appeal. *Id.* at Ex. 28.  Represented by counsel from the Ohio Public Defender's Office, Petitioner filed her Petition in this Court on May 30, 2025.  She pleads the following ground for relief:

> **Ground One:** By failing to secure and present mitigation evidence at sentencing, including a psychological assessment and psychological/medical records, trial counsel failed to provide effective assistance of counsel, as required by the 6th and 14th Amendments.
>
> **Supporting Facts:** Although psychological/medical records available to defense counsel at the time of sentencing demonstrated substantial mental-illness and trauma-history mitigation, trial counsel failed to secure and present a psychological expert to prove his mitigation claims instead relying on his own subjective arguments for mercy at sentencing. In post-conviction litigation, a psychological expert presented compelling mitigation evidence, of the type that reasonably competent counsel would have put forth, in

contrast to the subjective plea for mercy that was actually made at Ms. Baker's sentencing. The court of appeals unreasonably applied U.S. Supreme Court precedent when it upheld the trial courts denial of Ms. Baker's IAC claim.

(Petition, ECF 1, PageID 5).

# Analysis

## Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") adopted for the first time a statute of limitations for habeas corpus cases running for one year from the latest of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The standard form for habeas corpus petition under 28 U.S.C. § 2254 asks the petitioner "TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does

3

not bar your petition."  The question is included because District Courts are required to perform a preliminary review of habeas petitions when they are filed and before the State is ordered to answer.  A district court may dismiss a habeas petition *sua sponte* on limitations grounds when conducting an initial review under Rule 4 of the Rules Governing § 2254 Cases. *Day v. McDonough*, 547 U.S. 198 (2006)(upholding *sua sponte* raising of defense even after answer which did not raise it); *Scott v. Collins*, 286 F.3d 923 (6th Cir. 2002).  A large majority of habeas petitions are filed *pro se* and Item 18 assists the courts in conducting their initial review.

Petitioner here, however, is not proceeding *pro se*, but has representation from the Ohio Public Defender through attorneys Mallorie Thomas and Craig Jaquith (Petition, ECF No. 1, PageID 15).  The same office in the person of attorney Peter Galyardt represented Petitioner throughout her direct appeal (See Notice of Appeal, State Court Record, ECF No. 12, Ex. 6) and in proceedings on her Petition to Vacate under Ohio Revised Code § 2953.21, *Id.* at Exs. 11, 13, 20.

Assistant Ohio Public Defenders Thomas and Jaquith drafted the Petition and responded "N/A," to Item 18, meaning "not applicable."  (ECF No. 1, PageID 13).  The conviction in this case became final on direct review forty-five days after the Fifth District's affirmance of the conviction, or on July 16, 2022, when Petitioner's time to appeal to the Ohio Supreme Court expired and no appeal had been filed.  The Petition here was not filed until May 30, 2025, almost three years after the conviction became final. Item 18 was obviously not inapplicable, but Petitioner's counsel missed this opportunity to explain in the Petition why her filing was timely.

Respondent, however, did not ignore the limitations question but raises the affirmative defense that the Petition was untimely filed.  The Warden correctly notes the statute began to run on July 18, 2022, the next court day after July 16, 2022.

4

Petitioner defends the timeliness of her Petition by calculating it from the date on which she claims she learned of the "factual predicate" of her claim:

> [B]ecause Ms. Baker's postconviction ineffective-assistance claim was based entirely on an expert report that she obtained in August 2022, because her state-court filings were timely pursued after that date, and because less than one year of AEDPA statute-of-limitations time accrued before she filed her federal habeas corpus petition herein, her habeas petition is in fact timely.

(Reply, ECF No. 28, PageID 817). Petitioner thus asserts the running of the statute should be calculated under § 2244(d)(1)(D), relying on *Ayers v. Ohio Department of Rehabilitation and Correction,* 113 F.4th 665 (2024), *cert. den*. 145 S.Ct. 1632 (2025).

Because counsel had not answered Item 18 and Respondent had not had an opportunity to discuss Petitioner's argument under § 2244(d)(1)(D), the Magistrate Judge *sua sponte* granted Respondent an opportunity to argue the point (ECF No. 31). Respondent accepted that invitation and filed her Sur-reply (ECF No. 32).

In *Ayers,* the case on which Petitioner relies, the petitioner had been convicted of aggravated arson and child endangerment. After she lost on her petition for post-conviction relief, she filed for habeas relief[1]. The Sixth Circuit held:

> 1 The report from fire-inspection expert obtained while defendant was in prison established factual predicate for defendant's ineffective-assistance claim;
>
> 2 Defendant satisfied requirement of proving that she exercised due diligence to discover factual predicate of habeas claim; and
>
> 3 The one-year statute of limitations for bringing habeas claim began to run no earlier than day fire-inspection expert produced report.

---

[1] At the time of her filing, she had completed her prison sentence, but the Sixth Circuit concluded she suffered sufficient collateral consequences to support jurisdiction.

The *Ayers* Court acknowledged Congress had not defined "factual predicate," but noted

> But courts generally agree that "a factual predicate consists only of the 'vital facts' underlying the claim." (citations omitted). A fact is "vital" if it is required for the habeas petition to overcome sua sponte dismissal. *Rivas*, 687 F.3d at 535; *see* Rule 4, Rules Governing Section 2254 Cases (requiring district courts to dismiss habeas petitions "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief").

113 F.4th at 670. The relevant vital facts in *Ayers* were the expert opinion of John Lentini, a nationally recognized arson expert, whose report undermined scientifically the theory on which the case was prosecuted. The *Ayers* court agreed that receipt by Ayers of the Lentini report constituted the date for her discovery of the required vital facts and therefore the date on which the statute of limitations began to run.

The expert report at issue here is that of Bob Stinson, Psy.D., J.D[2]., which is attached to Baker's Petition for Post-Conviction Relief (State Court Record, ECF No. 10, PageID 96 ff.). In contrast to the scientific report by Lentini of the causes of the fire in the *Ayers* case, Stinson's report was prepared after an extensive review of record pertaining to Ms. Baker and a two and three-quarters hour interview with her. The first thirty pages of the Report consist of his summary of the records and of his conversation with Ms. Baker (PageID 96-145). He then reported the results of his mental health evaluation and the results of administering two psychological tests, the Adverse Childhood Experiences (ACE) tests and the Trauma- Symptom Inventory-2 (TSI-2) tests (PageID 125-39). He reached the following conclusions "to a reasonable degree of psychological certainty":

(1) Ms. Baker is-and was at the time of her offending-a significantly traumatized individual.

---

[2] Stinson is not a member of the bar of this Court although his office is in Columbus; his registration with the Ohio Supreme Court is active. Dr. Stinson offers only psychological opinions and does not opine that trial counsel's failure to offer an evaluation such as his at sentencing was deficient performance.

PageID 139.

(2) Ms. Baker-not surprisingly-developed significant mental health problems. PageID 141.

(3) In a maladaptive attempt to cope, Ms. Baker turned to drugs and alcohol, resulting in her developing significant substance use disorders. *Id.*

(4) Ms. Baker is in need of treatment, has shown evidence of benefiting from treatment, and has the ability to benefit from continued treatment. PageID 142.

(5) Ms. Baker is a young offender who will benefit from the natural processes of neuromaturation. *Id.*

Dr. Stinson also concluded "Through the natural process of neuromaturation, Ms. Baker will necessarily become a changed person; a different person than she was at the time of the offenses." PageID 142.  "Thus, the irresponsible conduct of an individual whose brain is not fully developed is not as morally reprehensible as that of a mature adult and even a heinous crime committed by such an individual is not evidence of irretrievably depraved character." PageID 144-45.

Thus the "vital facts" of the *Ayers* case contrast markedly with the facts in the Stinson Report.  As a first scientist, Lentini could infer from the physical evidence that the fire was not set intentionally, undercutting the key mens rea for arson.  In contrast, most of the historical facts on which Dr. Stinson based his Report were learned by him from Ms. Baker herself, particularly when and how she was traumatized as a child and the course of her substance abuse history.  What Dr. Stinson added were the results of the psychological testing he performed and his professional evaluation of what Ms. Baker and those tests told him.

Given these differences between the two Reports, the Magistrate Judge is reluctant to conclude the Stinson Report constitutes the "vital facts" of Ms. Baker's ineffective assistance of

trial counsel claim. Nonetheless, *Ayers* is a published (and therefore precedential) decision of the Sixth Circuit. Giving Petitioner the benefit of the doubt in interpreting *Ayers*, the Magistrate Judge will treat the date her counsel[3] received Stinson's Report as the date she discovered the factual predicate of her claim.

To take advantage of the start date in § 2244(d)(1)(D), a habeas petitioner must show she acted with due diligence in discovering the "vital facts". In *Ayers* the Sixth Circuit found sufficient evidence in petitioner's indigence and lack of legal representation during the relevant time period. Judge Mathis wrote:

> During all relevant times, Ayers was an indigent prisoner. For such individuals, courts must account for the "reality of the prison system" when deciding whether due diligence would have unveiled the factual predicate of a habeas petition. *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000); *DiCenzi*, 452 F.3d at 470–71; *cf. Jefferson v. United States*, 730 F.3d 537, 544 (6th Cir. 2013). That reality reveals that the expert report Ayers needed to make her claim was not in the prison library. No amount of diligent research through publicly available sources would have shown her that Winters was unqualified. She, a layperson, could not have known that Winters's analysis was not scientifically sound simply by hearing his testimony.
>
> Further, Ayers was not entitled to counsel for her post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *United States v. Augustin*, 16 F.4th 227, 233 (6th Cir. 2021); *State v. Crowder*, 60 Ohio St.3d 151, 573 N.E.2d 652, 653–54 (1991). So she, as an indigent prisoner, had no means to acquire an expert witness and pay the associated fees. She could not have obtained Lentini's report without OIP's assistance. Uncovering the factual predicate of her claim before she had representation was infeasible.

113 F.4[th] at 672. Like Ms. Ayers, Ms. Baker is indigent and has not been entitled to appointed counsel since the Fifth District affirmed her conviction on direct appeal. *Pennsylvania v. Finley*,

---

[3] Stinson was commissioned to prepare the report by Ms. Baker's counsel who were acting in her behalf. Under those circumstances, receipt by counsel as Ms. Baker's agent for this case counts as receipt by her.

481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). Unlike Ms. Ayers, however, Ms. Baker has had representation from the Ohio Public Defender's Office from the time her notice of direct appeal was filed[4]. Petitioner's counsel has offered no argument as to how his office exercised due diligence on Petitioner's behalf in obtaining the Stinson report. Dr. Stinson advises he was retained by post-conviction counsel sometime before he evaluated Ms. Baker on July 22, 2022, and signed his report August 15, 2022. PageID 94. Petitioner's counsel filed the report as an attachment to the Post-Conviction Petition on September 7, 2022 (State Court Record, ECF No. 10, Ex. PageID 73). Petitioner's counsel had certainly known he would need evidence *dehors* the record for post-conviction, because the ineffective assistance of trial counsel claim made here was the first assignment of error on direct appeal. Without evidence *dehors* the record, the claim would have been barred by *res judicata*. *State v. Perry,* 10 Ohio St. 2d 175 (1967). Petitioner's counsel apparently acted with dispatch in retaining Dr. Stinson.

Assuming that discovery of Stinson's Report counts as discovery of the factual predicate and the statute runs from the date of his Report, then the statute ran from August 15, 2022, until September 7, 2022, when it was tolled under § 2244(d)(2) by filing the post-conviction petition, a total of twenty-two days. It remained tolled until the post-conviction denial was affirmed March 11, 2024 (Opinion, State Court Record ECF No. 12, Ex. 24). It remained tolled thereafter until the Ohio Supreme Court declined review on July 9, 2024. *Id.* at Ex. 28. The Petition was filed within one year of that date.

Respondent urges this Court not to follow *Ayers*, but instead to heed the opinion of Justice Alito (joined by Justice Thomas) concurring in the denial of certiorari in *Ayers*; review had been sought by the State. Whether or not this Court agrees with Justice Alito's reasoning, it is not

---

[4] Ms. Ayers was represented in the Sixth Circuit by the Ohio Innocence Project.

authorized to disregard *Ayers*.     *Ayers* is a published decision of the Sixth Circuit, binding on lower courts in this circuit unless overruled by the Sixth Circuit sitting *en banc*[5].

Conversely, the Supreme Court's refusal to exercise jurisdiction is not precedential. *Teague v. Lane,* 489 U.S. 288, 296 (1989)("the 'denial of a writ of certiorari imports no expression of opinion upon the merits of the case'"(quoting *United States v. Carver,* 260 U.S. 482, 490 (1923)).  *Maryland* v. *Baltimore Radio Show, Inc.*, 338 U. S. 912, 919 (1950) (Frankfurter, J., respecting denial of certiorari) ("[T]his Court has rigorously insisted that . . . a denial [of a petition for a writ of certiorari] carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review").  If the denial of certiorari has no precedential value, surely an opinion on why certiorari was denied carries no precedential weight, regardless of its persuasive reasoning.

The Magistrate Judge recommends Respondent's statute of limitations defense be overruled.

**The Merits**

Ms. Baker presents a single ground for relief:  that she received ineffective assistance of trial counsel when her trial attorney did not present a psychological expert in mitigation at sentencing.

---

[5] Trial courts are obliged to follow precedent set by the Supreme Court and Courts of Appeals.  "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."  *Hutto v. Davis*, 454 U.S. 370, 375 (1982);  *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506 (11th Cir. 1987).  See *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U. S. 477, 484,  (1989)*,* cited for this proposition by Justice Kavanaugh in his concurrence in *Ramos v. Louisiana*, 590 U.S. 83 (2020).

The governing standard for ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

To prevail on an ineffective-assistance-of-counsel claim, a movant must establish that (1) counsel's performance was deficient and (2) the deficiency resulted in prejudice, meaning that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Shimel v. Warren*, 838 F.3d 685, 696 (6th Cir. 2016).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

11

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra*.; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

Petitioner presented her ineffective assistance of trial counsel claim to the Fifth District Court of Appeals as he first assignment of error on appeal from denial of her petition for post-conviction relief. The Fifth District overruled that assignment of error on both the deficient performance and prejudice prongs of *Strickland*. In doing so it recited at length the mitigating factors argued by Ms. Baker's trial counsel at sentencing. *State v. Baker,* 2024-Ohio-906, ¶ 56,

pp. 8-11(Ohio App. 5th Dist. Mar. 11, 2024). It followed with reciting the aggravating evidence pointed out by the prosecutor, including post-plea behavior. *Id.* at ¶ 57, pp. 11-12. It noted that in reaching his decision in post-conviction, the trial judge had considered Dr. Stinson's report and how the report paralleled mitigating evidence the trial attorney had argued. It summarized its conclusions as follows:

> {¶58} We do not find that trial counsel's act in forgoing the hiring and presentation of a mitigation expert under the particular facts of this case amounted to a substantial violation of an essential duty by that counsel. Although Dr. Stinson's testimony and report is more detailed and nuanced, the information that he presented to the trial court is fundamentally the same as the oral evidence provided by trial counsel to the trial judge during the sentencing hearing, and the evidence contained in the pre-sentence investigation report. The main difference is that Dr. Stinson diagnosed Baker with several mental illnesses. Dr. Stinson's testimony and report present the same evidence of Baker's dysfunctional family and upbringing, alleged abuse, and traumatic events in her life. Dr. Stinson agrees that Baker was responsible for her conduct and capable of distinguishing right from wrong. He presented nothing of a compelling nature concerning a little understood psychological condition that would serve to mitigate Baker's actions not as premeditated, but as those of desperation and panic. He urged the trial judge to consider, as did trial counsel at sentencing, Baker's age, that she could benefit from treatment and possibly at some time in the future become less violent and less of a threat.

*State v. Baker, supra.*

As to prejudice, the Fifth District concluded

> {¶60} However, even if we were to find that trial counsel was under a duty to hire a mitigation expert in this noncapital felony sentencing case, we would find that Baker has failed to demonstrate prejudice because the trial judge did consider the evidence during the proceedings on her petition for postrelease control and was not persuaded to change his sentence.

> {¶69} Accordingly, even if counsel's failure to present a mitigation expert at sentencing reflected deficient performance, which we do not find under the specific facts of this case, Baker has failed to establish prejudice under *Strickland*.

13

*Id.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Cunningham v. Shoop,* 23 F.4th 636, 650 (6th Cir. 2022); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000); *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  Because the Fifth District decided her ineffective assistance of trial counsel claim on the merits, Ms. Baker's burden in this case is to show that decision was contrary to or an objectively unreasonable application of supreme court precedent or a decision based on an unreasonable determination of the facts.

Petitioner's argument focuses on the factual branch of the standard.  In summary she argues "The Fifth District's determination that the newly developed mitigation evidence was 'fundamentally the same' as trial counsel's prior **subjective appeal for mercy** is an unreasonable determination of the facts in the state court record."  (Reply, ECF No. 28, PageID 823, Emphasis supplied).

Petitioner's counsel correctly points out that defense counsel's closing argument is not evidence.  *Id.* at PageID 823.  They then note the obligation of the sentencing judge to consider mitigation evidence at sentencing. *Id.* at PageID 824.  They argue that trial counsel did not present any evidence about Ms. Baker's mental illness. *Id.* at PageID 824-25.  Nor did trial counsel "even mention, let alone present evidence regarding, the now well-developed scientific understanding of

14

the process of neuromaturation in young adults," *Id.* at PageID 825. Nor did he mentioned Ms. Baker's childhood trauma. *Id.* at PageID 826. Finally, trial counsel asserted Ms. Baker would not likely receive treatment in prison, whereas Dr. Stinson had opined she was responsive to treatment. *Id.* at PageID 826.

As to the deficient performance prong of *Strickland*, Petitioner's counsel argues "this is not a particularly close call." *Id.* at PageID 830. That argument depends on drawing sharp distinctions between what trial counsel summarized from his interviews with Ms. Baker and what Dr. Stinson learned from his interview. Both largely summarized what they had learned from Petitioner. Ms. Baker's attorney's argument was not a "subjective appeal for mercy," but a summary parallel to most of Dr. Stinson's report. And Petitioner submits no case law or even excerpts from practice manuals suggesting it is ineffective assistance to fail to submit material on neuromaturation when defending a young defendant.

Regarding prejudice, Ms. Baker's counsel argues the Fifth District applied a standard of review, incorrect under *Strickland*, requiring her to prove that the result at sentencing would have been different if the Stinson report had been submitted at that stage. *Strickland* requires proof of a reasonable probability of a different result, asking whether it is "reasonably likely" the result would have been different. 466 U.S. at 696. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, *Harrington v. Richter*, 562 U.S. 86, 111-112 (2011). Petitioner focuses on language in the appellate opinion stating "Accordingly, the only question before us is whether the trial judge considered Dr. Stinson's testimony and report before he overruled Baker's petition for postconviction relief. If he did, we cannot change the result," as if this meant it was sufficient to show the report had been introduced in evidence. That is not what happened. The trial court held an evidentiary hearing at which Dr. Stinson testified for more than two hours

(Decision, State Court Record, ECF No. 12, Ex. 19, PageID 352).

Judge Mark Fleegle tried this case and sentenced Ms. Baker, then heard the case again in post-conviction.  The Stinson report as well as Dr. Stinson's testimony did not persuade Judge Fleegle when he actually considered them which leads readily to the conclusion they would not have changed his mind had they been presented at sentencing.  Petitioner has not proved prejudice under the applicable *Strickland* standard. The Fifth District's decision rejecting Ms. Baker's ineffective assistance of trial counsel claim is entitled to deference.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that Respondent's statute of limitations defense be overruled but that the Petition be dismissed with prejudice on the merits.

No recommendation is made here on the issuance of a certificate of appealability.  If the Court dismissed the Petition as recommended, Petitioner must separately move for a certificate.

January 9, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report

16

and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.